FRANK E. BROWN, Petitioner for Mandamus,

*vs.*

DANA P. FOSTER.

Kennebec.    Opinion May 29, 1895.

*Elections.   Mayor of Waterville.   Casting Vote.   Spec. Laws, 1887, c. 195.*

The mayor of the city of Waterville, is not entitled by the city charter (Private and Special Laws of 1887, chapter 195), to vote with the aldermen and councilmen in joint convention in the election of a city clerk and city treasurer, besides having the casting vote in such election in case of a tie.

The argument in favor of the pretended prerogative on the part of the mayor rests upon an introductory clause in the city charter which declares that " the mayor, board of aldermen and common council shall constitute the city council;" it being further provided in a subsequent section of the charter that certain subordinate city officers, " shall be elected by joint convention of the city council." *Held;* that these general terms describing the mayor as a part of the city council are specifically and particularly defined in other and subsequent sections and clauses, by which it is made clear that it is only in the use of certain special powers, such as being a presiding officer, making appointments and exercising the veto power, etc., is he a part of the city council.

*Also,* that the section of the city charter which makes him the presiding officer over the board of aldermen and joint conventions of the city council expressly provides that he shall have, not a casting vote, but " only "—a casting vote.

The city charter uses the phrase " city council " in several instances in such a manner as to include the two boards but excluding the mayor,—thus recognizing the wise parliamentary principle which restricts the functions of a presiding officer to holding a balance of power between equally divided votes

of deliberative bodies in order to facilitate but not block their business; for breaking but not making a tie.

ON EXCEPTIONS.

This was a petition for mandamus to compel the defendant to deliver to the complainant all books, papers, records, etc., appertaining to the office of city clerk of Waterville, the complainant alleging that he was duly elected to that office, which allegation the defendant denied; the complainant further alleging that in the election of subordinate city officers in the city of Waterville, the mayor of said city could not participate except where each candidate had an equal number of votes.

In the hearing before the justice before whom the proceedings pended, the following rulings, findings and decrees were made:

1. That in the election of said subordinate officers, said mayor was not entitled to vote unless each candidate had received an equal number of votes.

2. That the vote cast by the mayor at the election of a city clerk on March 27th, A. D., 1895, was illegal.

3. That the peremptory writ of mandamus be issued.

To all which rulings, findings and decrees, the respondent took exceptions.

The case is stated in the opinion.

*S. S. Brown*, for petitioner.

*Reuben Foster*, and *Dana P. Foster*, *W. C. Philbrook*, for respondent.

SITTING: PETERS, C. J., WALTON, EMERY, FOSTER, HASKELL, WISWELL, JJ.

PETERS, C. J. The only question sought to be settled by this proceeding of mandamus is whether the mayor of the city of Waterville is entitled by the provisions of the charter of that city (ch. 195, Pri. and Spec. Laws, 1887) to vote with the aldermen and councilmen in joint convention in the election of subordinate city officers, in the present case in the election of a city clerk, besides having the casting vote in such election in case of a tie.

The case comes to us upon exceptions to the ruling of the justice of this court who tried the action, and who decided that the mayor had no such right as was claimed and exercised by him, the learned justice making at the time the following oral observations in support of his conclusion :

"It appears that eleven members of the city council in joint convention voted for the petitioner, for city clerk, and ten for the respondent. Thereupon the mayor claimed the right to vote and did vote for the respondent who now claims that no person received a majority of all the votes and hence there was no election for city clerk.

"In determining the mayor's right to vote under these circumstances recourse must first be had to the city charter of Waterville. It is provided in section two of this act of incorporation that the 'mayor, board of aldermen and common council shall constitute the city council.'

"Section three provides that the mayor 'shall preside in the board of aldermen and joint meetings of the two boards but shall have only a casting vote.' It is further provided in the same section that the 'city council may elect the mayor to any city office and allow him a reasonable compensation for service rendered in such office,' while by section seventeen the aldermen and common council are declared to be ineligible to any office of profit or emolument the salary of which is payable by the city.

"Section six provides that 'all officers of the police and health departments shall be appointed by nomination by the mayor and confirmed by the aldermen. . . . All other subordinate officers shall be elected by joint convention of the city council.'

"These provisions of the charter must be construed with reference to the general policy of our law respecting municipal government and in the light of the familiar rule of construction that as the different parts of a law reflect light upon each other it should be so expounded, if practicable, as to avoid any contradiction or inconsistency and give some effect to every part of it.

"The provision that the mayor 'shall preside in the board of aldermen and joint meetings of the two boards but shall have

only a casting vote' is found in precisely the same language in every city charter in the State from its early history to the present time ; and with the exception of the express mention of the mayor as one of those constituting the 'city council' of Waterville all the other provisions relating to the point under consideration are essentially the same in all other charters as in the Waterville charter. It has been the obvious policy of the State to provide in their charters for annual city elections and to give effect to the free voice of the people and insure the orderly continuance of the city governments by facilitating rather than obstructing the annual elections of officers ; and it is understood to have been the uniform practice under all these charters for the mayor to exercise the right in joint convention to give only a casting vote for the purpose of breaking a tie and not for the purpose of making one. Such a practical interpretation which has been accepted as correct for nearly three-fourths of a century is entitled to respectful consideration in the decision of such a question.

"This view of the construction to be given the right to give 'only a casting vote' is strengthened by section thirty-four of chapter three of the Revised Statutes which declares that in the 'election of any city officers by ballot in the . . convention of the aldermen and common council in which the mayor has a right to give a casting vote if two or more candidates have each half of the ballots cast he shall determine and declare which of them is elected.' Here is a plain implication that the term 'casting vote' as used in this connection, is restricted to a vote thrown by the mayor as a presiding officer when the votes cast by the members are equally divided. It seems clear that if it had been the purpose of the Legislature to make such an important distinction between the Waterville charter and all others, as the respondent contends for, more explicit and unequivocal language would have been used than any found in this act. The mere mention of the mayor in connection with the aldermen and common council as of those constituting the city council is not sufficient to show such intention.

"It is plain also that no distinction was intended between the

'joint meetings of the two boards,' in which the mayor has ' only a casting vote,' and the 'joint convention of the city council,' for the election of officers ; for it has not been suggested that 'joint meetings of the two boards,' are held for the transaction of any business worthy of mention, other than the election of subordinate officers.

"For these reasons it seems to be my duty to grant the petition and order the writ of mandamus to issue."

In the views expressed in this statement we fully concur.

The force of the argument in favor of this pretended prerogative of the mayor rests in an introductory clause in the city charter which declares that "the mayor, board of aldermen and common council shall constitute the city council ;" it being further provided in a subsequent section of the charter that certain subordinate city officers "shall be elected by joint convention of the city council."

But while the first clause in very general terms describes the mayor as a part of the city council, the meaning of that declaration is found in other and subsequent clauses and sections which define with particularity just what part of the city council he shall be considered to be. Such subsequent provisions of the charter declare exactly what the powers of the mayor shall be, and in what manner the same shall be exercised. Nor does the clause in section two, which embraces aldermen and common councilmen within the composition of the city council, as well as it does the mayor, attempt to define or limit their powers or duties, but those also are left to be enumerated afterwards.

The charter confers various special powers on the mayor, among which is the power of appointment in many instances. He is so far a part of the city government that no legislative act can be passed by the other branches without his approval, unless by a vote of two-thirds of the members in each of such other branches of the government. It is in this sense, and to the extent of such powers as are specially committed to him, and no further, that he is a part of the city council. No other construction of the charter as a whole will make a consistent and sensible instrument of it.

In another respect may the mayor in a general if not a strict and technical sense be denominated some part of the city council, and that is because he presides over the meetings of the aldermen and over "the joint convention of the city council." But the section granting him that privilege expressly provides that in the business of such meetings he shall have, not a casting vote, but "only" a casting vote. This is a wise recognition of the parliamentary principle which allows a presiding officer the authority of holding a balance of power between equally divided votes of a deliberative body in order to faciliate but not to block legislation; or, as the justice presiding in this case expressed it, for breaking but not for making a tie vote.

It will be seen on an examination of the charter in question that the phrase "city council" is employed in several instances as evidently including the two boards and excluding the mayor. This idea pulsates throughout most of the provisions of the charter.

*Exceptions overruled.*