JULES A. BOUSQUET *v.* STATE, EX REL. THOMAS H. GLEASON.

MUNICIPALITIES. *Code* 1892, *§* 2978. *Board of aldermen. Election of officers. Mayor's right to vote.*

The mayor of a municipality is not a member of the board of aldermen, and, under Code 1892, § 2978, providing for the election of inferior municipal officers, has no right to vote unless there be a tie in the votes of the aldermen.

FROM the circuit court of Harrson county.

HON. THADDEUS A. WOOD, Judge.

The state, suing on the relation of Gleason, appellee, was the plaintiff in the court below; Bousquet, appellant, was defendant there. The suit was a *quo warranto* proceeding to determine which one of the parties was police justice of the city of Biloxi.

On the eleventh day of December, A.D. 1900, a regular election was held in said city, and certain persons were elected to the offices of mayor and aldermen. After this election, on the first Tuesday of January, being the first day of the month, the board of mayor and aldermen then sitting, and whose term expired upon the first Monday of January, the 7th inst., undertook to elect the officers who are by law required to be elected by the mayor and board of aldermen. Among other officers chosen by them was Gleason, appellee, as police justice.

On January 7 the new mayor and board of aldermen qualified as such and entered upon the discharge of their official duties. The meeting was regularly called for the purpose of electing officers and organizing the board, and was attended by the mayor and all the aldermen. At that meeting two candidates were placed in nomination for the office of police justice,

viz., Bousquet, appellant, and Gleason, appellee. Prior to the calling of the roll the mayor announced that he was entitled to vote when the roll was called, and directed the secretary to call his name. Five aldermen voted for Gleason, appellee, and four aldermen and the mayor voted for Bousquet, appellant. Upon the tie, thus created, the mayor claimed and exercised the right to give the deciding or casting vote, and voted for Bousquet, appellant, declared him elected, and issued a commission to him, and he entered upon the discharge of his duties. Thereafter this proceeding was instituted.

The plaintiff, Gleason, having obtained judgment in the court below in his favor, the defendant, Bousquet, appealed to the supreme court.

*Bowers, Chaffe & McDonald* and *McWillie & Thompson* and *Virgil A. Griffith*, for appellant.

The old board had no right or power to elect a police justice for the term beginning in January, 1900. [For a synopsis of briefs on this subject see the report of the case of *Ott* v. *State, ex rel. Lowrey, post*, p. 487.]

Section 2978 of the code provides a special electorate, and lodges in a select body of electors the right to choose a tax collector, clerk, street commissioner and police justice. The words of the statute are "the mayor, the aldermen, the treasurer, and the marshal shall be elected by the people; the other officers by the mayor and board of aldermen." The language and intent of this section is plain and unmistakable. The electors are the mayor and the board of aldermen. So far as that clause vests them with authority, their powers are co-ordinate, each is a voter in the electoral college; that is, the mayor is a voter, and each member of the board is a voter. The mayor is as much a voter as any member of the board because he is mentioned *eo nomine*, and the ballot is expressly given to him. To insist that he has no right to vote upon the roll-call is to nullify the law, and to make the inser-

tion of the word "mayor" of no consequence, nugatory and useless.

The legislature evidently meant something when it declared that the officers should be elected by the "mayor and board of aldermen;" it could only mean that each should be an elector with co-ordinate powers, each vested with the right of suffrage, to cast his vote for the candidate of his choice.

Nothing is urged or can be urged, against this construction, except that as a general proposition the presiding officer votes only in case of a tie. Forget for a moment that the mayor is vested, by an entirely different section, with the right to preside over the board, and treat. it as if the secretary, or a stranger, or some other person, preserved order during their deliberations, and the most captious and skeptical will not deny that the mayor is a voter, whose name is to be called, and whose ballot is to be deposited upon the original election of officers.

If the language of the law was "the board of mayor and aldermen" the power of the mayor and his rights to vote might be referred to his general power to preside over the meetings of the board and in cases of tie to give the casting vote, because then his seat in the body and his right to vote would depend entirely upon his presidency, and his right to preside over their deliberations. But such is not the language. The ballot is vested in him by virtue of his office of mayor, and not by virtue of his presidency of the council; it is an appurtenance to his office as chief magistrate, which has nothing to do with his presiding over the board.

It is not unusual to find the right to select these minor officers vested in municipal officers other than the board of aldermen. An investigation of this subject will disclose to the court that in some municipal corporations the election is held by the councilmen, the mayor and the marshal, while in others the treasurer, senior burgess or senior bailiff are made members of the special electorate or electoral college.

Let us assume, for the sake of illustration, that in Mississippi (as in some other places), the marshal had been made a member of this electoral college and vested with a vote. In other words, that the law read "the other officers shall be elected by the mayor, the marshal and the board of aldermen." Would it be contended for a moment that under it the mayor was not an elector, and that his name was not to be called and his ballot deposited at the time of the taking of voices. Why should the marshal's name be called and the mayor's omitted, or why should the omission from the law of the marshal's name destroy the mayor's vote? This illustration is sufficient to demonstrate beyond all cavil that the denial of the mayor's right to vote on the roll call, results only from a confusion of his powers as the presiding officer of all municipal assemblies with his right as an elector to the franchise vested in him by § 2978 and by virtue of his office as mayor.

Whatever position may be taken with reference to his right to create a tie, and then vote as presiding officer after he has voted on the ballot, there can be no question as to his right as an original elector and suffragan in this special election.

The general grant of power to the mayor to give the deciding vote in case of a tie, applies to elections by the body over which he is presiding, and to confirmations by that body of appointments made by him. *State* v. *Yates*, 37 L. R. A., 205. In that case the mayor could vote only in case of a tie, but the restriction resulted from the fact that the statute expressly denied him the right, and the court will find that every case in which the position taken by us has been denied turns upon the language of the statute under which the election was held or the charter by which the city was governed. The industry of counsel has unearthed no cause maintaining their view, where the language of the statute was not, "the mayor voting only in case of a tie," "he shall vote only upon a tie," "shall have only a casting vote," or other like language, denying in express terms the right of the presiding officer to vote upon the

roll call. For other authorities on this point, see *Launce* v. *People*, 113 Ill., 137; *Small* v. *Orr*, 79 Maine, 78; *Carroll* v. *Wall*, 35 Kan., 36. · Each case, as heretofore remarked, turns upon its own statute, and the only case that we have been able to find in the books that is parallel to ours is *Remington* v. *Church of the Atonement*, 48 Barbour (N. Y.), 603. To this case and to its reasoning, which fully sustains us, we invite your honors' attention.

*White & Harper*, for appellee.

The old board had the unquestioned right to elect a police justice. [For a synopsis of the brief of counsel on this point, see the report of the case of *Ott* v. *State, ex rel. Lowery*, *post*, 487.]

Appellant contends that, because § 2978, code 1892, confers upon the "mayor and board of aldermen" the power to elect officers, it thereby gives the mayor the right to vote by virtue of his office as mayor, and that § 2979 gives him an additional vote in case of a tie, but just here we invoke the doctrine enunciated by counsel for appellant themselves, "that the whole plan of municipal government and the whole chapter on municipalities is to be considered in arriving at the meaning of the sections under construction." It is true that by § 2978 the tax collector and city clerk are elected by the mayor and board of aldermen. By other sections it is provided that ordinances shall be passed by the mayor and board of aldermen, bonds issued by the mayor and board of aldermen, assessments made and taxes levied by the mayor and board of aldermen, and in fact all the affairs of the city are administered by the mayor and board of aldermen, but it is the manifest meaning of all the statutes that these several duties shall be performed at meetings of the mayor and board of aldermen, and § 2979 prescribes how it shall be done, that is, with the mayor presiding and voting in case of a tie and vetoing, if he desires, any measure passed by the board of aldermen.

If § 2978, which says these officers shall be elected by the mayor and board of aldermen, thereby gives the mayor a vote in the election of officers when there is no tie, then all the other sections of the code providing for the transaction of business, where the same language is used, would give him, as a matter of course, the same right, thereby vesting the mayor with the right to vote in passing measures and then veto them and then vote again in sustaining his veto.

By § 2979 the number of aldermen in a village is fixed at three. Suppose the court should hold that the mayor has a vote in the first instance and then another in case of a tie; then in all cases it would require a unanimous vote, and not a two-thirds vote, of the aldermen of a village to pass any measure without the assent of the mayor, for, if the vote of the aldermen should be divided, one voting for and two against the measure, the mayor, by voting with the one, can make a tie and then vote again and carry it, although two-thirds of the aldermen vote against the measure; or he could defeat a measure in the same way, although two-thirds of the aldermen should vote for it.

Counsel for appellant have made an exhaustive search for precedents, but have failed to find any case where the mayor of any municipality was ever clothed with any such power. The only case counsel could find where any presiding officer ever exercised or claimed the right to vote twice was in a meeting of the vestrymen of a church, where each vestryman was clothed with the power to vote once as a vestryman in the election of a rector, and the chairman, elected from the vestrymen, was expressly given the casting vote in case of a tie. This case alone is cited by Dillon as authority for the proposition that the mayor can sometimes give a second vote in case of a tie.

Argued orally by *E. J. Bowers* and *R. H. Thompson*, for appellant, and by *W. A. White*, for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

It is not necessary to decide in this case anything more than the right of the mayor to vote twice and to vote in the election of officers. We are clearly of the opinion (after a careful analysis of the statutes bearing on the question) that the mayor of a city which has come under the provisions of the code of 1892 on municipalities can only vote on an election for officers (provided for by § 2978) when there is a tie between the aldermen. He is not a member of the board of aldermen. Counsel well say: " It is clear from an examination of chapter 93 of the code that the mayor is not, and was never intended to be, a member of the board of aldermen. He is not elected from the aldermen and is not made a member by the statute."

"The affairs of the city are administered by the ' mayor and board of aldermen.' The mayor sits with but is not a constituent part of the board of aldermen. He has only such powers in joint meetings of the mayor and board of alderman as are given him by the statute. Section 2979 of the code prescribes his duties and defines his powers at such meetings, which are, first, to preside at all meetings of the ' board of aldermen," second, in case there be an equal division to cast the deciding vote; third, to veto any measure passed by the ' board of aldermen.' It is manifest from this section alone that he is not a member of the board. He is referred to as presiding over meetings of the ' board of aldermen ' and voting in case of an equal division (from the context manifestly meaning an equal division of the aldermen), and vetoing measures passed by the ' board of aldermen,' not passed by the ' mayor and board of aldermen.'

" By § 2979 it is also provided that a measure vetoed can be passed by a two-thirds vote of the aldermen (not the mayor and aldermen), meaning unquestionably a two-thirds vote of all those present entitled to vote. If all the aldermen were present when a measure was vetoed, would any one contend that if six aldermen voted to pass such measure over the mayor's veto

that by voting with the three, he could defeat the measure? By § 2986 the mayor has the right to remit fines, etc., by and with the consent of the aldermen, meaning, of course, as shown, by a majority vote. Will it be contended that in a body of nine aldermen, the mayor could take four and by voting twice make a vote of six to five, and thereby be enabled to remit fines by the consent of a minority of the aldermen voting?

" By § 2991 a majority of all the aldermen elected constitute a quorum to do business, and § 2943 authorizes the selection of an alderman to preside in the mayor's absence; so five aldermen could meet and transact business, but four aldermen and the mayor could not.

" If the mayor and four aldermen had absented themselves from the meeting at which this election was held, the five remaining aldermen could have proceeded to hold the election and to transact business, but if these five aldermen had absented themselves the remaining four, with the mayor, would have been powerless either to proceed with the election or transact other business. If four aldermen and the mayor have six votes, why do they not constitute the quorum to do business, when five aldermen with five votes constitute a quorum?

" Nor is the board even designated as the 'board of mayor and aldermen,' but the statute invariably uses the expression 'mayor and board of aldermen,' thus, by § 2925, the 'mayor and board of aldermen' are authorized to pass ordinances; by § 3005 the 'mayor and board of aldermen' may provide a municipal building; by § 3014 the 'mayor and board of aldermen' may issue bonds; by § 2992 the 'mayor and board of aldermen' may elect a tax collector, and by § 3001 a police justice, and so on, indicating clearly that it was never the intention of the legislature that the mayor and aldermen should form a board or electoral college, of which the mayor and the aldermen should all be members.

" If § 2978, which says these officers shall be elected by the 'mayor and board of aldermen,' thereby gives the mayor a

vote in the election of officers when there is no tie, then all the other sections of the code providing for the transaction of business, when the same language is used, would give him, as a matter of course, the same right, thereby vesting the mayor with the power to vote in passing measures, and then veto them and vote again in sustaining his veto.

" By § 2978, the number of aldermen in a village is fixed at three. Suppose the court should hold that the mayor has a vote in the first instance, and then another in case of a tie, then in all cases it would require a unanimous vote, and not a two-thirds vote of the aldermen in a village to pass any measure without the assent of the mayor, for if the vote of the aldermen should be divided, one voting for and two against the measure, the mayor, by voting with the one, can make a tie, and then vote again and carry it, although two-thirds of the aldermen vote against the measure, or he could defeat a measure in the same way, although two-thirds of the aldermen should vote for it."

We think these are sound views. The monstrous proposition that the mayor can vote in such election for officers as an alderman, to create a tie, and then, in his capacity as mayor, to break the tie—a construction which leads to the most absurd results—cannot be attributed to the legislature. No such construction is warranted. Section 2979 completely negatives it. Since the relator was elected, therefore, by the new board, a majority of the aldermen having voted for him, and since, under § 3001, code 1892, the mayor and board of aldermen could elect a police justice at any time, he is clearly entitled to the office. Wherefore the judgment of the court below is

*Affirmed.*